Lenora M. Lapidus (LL-6592)
Jennifer Arnett (JA-6161)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
212-519-7816

David A. Barrett (DA-9626)
Eric Brenner (EB-2177)
Boies, Schiller & Flexner, LLP
570 Lexington Avenue
New York, NY 10022
212-446-2300

Attorneys for Plaintiffs


# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK


| | |
|---|---|
| JUANA SIERRA TREJO,<br>GABRIELA FLORES VIEGAS,<br>INÉS BELLO CASTILLO,<br>CARMEN CALIXTO RODRÍGUEZ, and<br>LUCERO SANTES VÁZQUEZ,<br><br>Plaintiffs<br><br>v.<br><br>BROADWAY PLAZA HOTEL,<br>FELIX DAVID BUENDÍA RAMÍREZ,<br>SALVATORE LODUCA, and PHILIP<br>LOZIA,<br><br>Defendants. | No. 04-cv-4005 (LTS)<br><br><br>**MEMORANDUM OF LAW IN<br>OPPOSITION TO MOTION TO<br>DISMISS AND TO STRIKE** |

<u>TABLE OF CONTENTS</u>

<u>Page No</u>.

Preliminary Statement ................................................................................................ 1

Relevant Factual Background ...................................................................................... 3

Argument .................................................................................................................... 4

I.      THE EEOC PROPERLY ISSUED EARLY RIGHT TO SUE NOTICES AND
        THE COURT HAS JURISDICTION OVER PLAINTIFFS' TITLE VII CLAIMS
        (Fourth and Fifth Claims). .......................................................................... 4

II.     NEW YORK STATE LAW PERMITS CAUSES OF ACTION FOR UNPAID
        OVERTIME AND A SPREAD OF HOURS VIOLATION (Second and Eleventh
        Claims). ...................................................................................................... 8

III.    THE COMPLAINT STATES A CLAIM FOR FORCED LABOR (Third Claim) .......... 11

IV.     THE COMPLAINT STATES A CLAIM FOR FRAUDULENT INDUCEMENT
        (Twelfth Claim) ........................................................................................ 15

V.      THE COMPLAINT STATES A CLAIM FOR NEGLIGENT HIRING,
        RETENTION, AND SUPERVISION (Sixteenth Claim) ................................. 17

VI.     NONE OF THE ALLEGATIONS OF THE PRELIMINARY STATEMENT
        SHOULD BE STRICKEN ........................................................................... 19

Conclusion ............................................................................................................... 21

TABLE OF AUTHORITIES

Page No.

**Cases**

Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc., 944 F. Supp. 240
(S.D.N.Y. 1996). ........................................................................................ 19

Ballard v. Cmty. Care Home Referral Serv., Inc., 695 N.Y.S.2d 130
(N.Y. App. Div. 1999) ................................................................................ 10

Baume v. 212 E. 10 N.Y. Bar Ltd., 634 N.Y.S.2d 478 (N.Y. App. Div. 1995) ...................... 18

Bryant v. Cal. Brewers Ass'n, 585 F.2d 421 (9th Cir. 1978),
vacated on other grounds 444 U.S. 598 (1980) ........................................................ 5

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)............................................ 14

Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622 (S.D.N.Y. 1998)................................... 10

Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102 (1980) ...................... 13

Daniels v. Loizzo, 174 F.R.D. 295 (S.D.N.Y. 1997) ............................................... 18

Deerfield Cmty. v. Cheesebrough-Ponds, 502 N.E.2d 1003 (N.Y. 1986)........................... 16

DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242 (2d Cir. 1987) ...................... 16

Doehla v. Wathne Ltd., Inc., No. 98-civ-6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999)... 16

Falbaum v. Pomerantz, 891 F. Supp. 986 (S.D.N.Y. 1995) ...................................... 14

Figueira v. Black Entm't Television, Inc., 944 F. Supp. 299 (S.D.N.Y. 1996)........................ 5

Gabriel Capital, L.P. v. NatWest Finance, Inc., 94 F.Supp.2d 491 (S.D.N.Y. 2000).............. 15

Gallegos v. The Brandeis School, 189 F.R.D. 256 (E.D.N.Y. 1999) ............................... 11

Gieseler v. Smith, No. 85-civ-4435, 1987 WL 27705 (S.D.N.Y. Dec. 7, 1987) ...................... 18

Hellgren v. Bell Atlantic Corp., No. 99-cv-11937, 2000 WL 726496
(S.D.N.Y. May 30, 2000)............................................................................. 5

Hornstein v. Negev Airbase Constructors, 488 N.Y.S.2d 435 (N.Y. App. Div. 1985), ........... 10

In re Ivan F. Boesky Securities Litigation, 36 F.3d 255 (2d Cir. 1994) .................................. 14

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697 (2d Cir. 1994)............. 14

Kenneth R. v. Roman Catholic Diocese of Brooklyn, 654 N.Y.S.2d 791
(N.Y. App. Div. 1997) ......................................................................................................... 18

Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976) .................................... 19

Manliguez v. Joseph, 226 F. Supp. 2d 377 (E.D.N.Y. 2002) .................................................. 10

Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336 (D.C. Cir. 1999).................................... 7

Nodelman v. Gruner & Jahr USA Publ'g, No. 98-cv-1231, 2000 WL 502858
(S.D.N.Y. April 26, 2000)....................................................................................................... 5

Palumbo v. Lufthansa German Airlines, No. 98-civ-5005, 1999 WL 540446
(S.D.N.Y. July 26, 1999) ........................................................................................................ 5

Parker v. Metro. Transp. Auth., 97 F. Supp. 2d 437 (S.D.N.Y. 2000) ...................................... 5

Rosario v. Copacabana Night Club, Inc., No. 97-civ-2052, 1998 WL 273110
(S.D.N.Y. May 28, 1998).......................................................................................................... 5

Sabo v. Delman, 143 N.E.2d 906 (N.Y. 1957) ........................................................................ 16

Silberstein v. Advance Magazine Publ'r, Inc., 988 F. Supp. 391 (S.D.N.Y. 1997) ................ 18

Sims v. Trus Joist MacMillan, 22 F.3d 1059 (11th Cir. 1994) .................................................. 5

Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992) ......................................................... 16

Thomas v. N.Y. City Health & Hosps. Corp., No. 00-civ-6760, 2001 WL 1218398
(S.D.N.Y. Oct. 9, 2001) ......................................................................................................... 18

United States v. Garcia, No. 02-cr-110s-01, 2003 WL 22956917 (W.D.N.Y. Dec. 2, 2003) .. 12

United States v. Kozminski, 487 U.S. 931 (1988)................................................................... 12

Vincenzino v. Calvosa, 572 N.Y.S.2d 611 (N.Y. Sup. Ct. 1991).............................................. 18

**Statutes and Regulations**

18 U.S.C. § 1589............................................................................................................... 11

18 U.S.C. §1590................................................................................................................. 13

18 U.S.C. § 1595 …………………………………………………………………………………….. 11

42 U.S.C. § 2000e-12(a) ........................................................................................... 6

29 C.F.R. § 1601.28(a)(2) ..................................................................................... 4, 5

N.Y. Lab. Law § 663.1 ............................................................................................. 9

N.Y. Lab. Law § 665 ............................................................................................ 8, 9

New York Comp. Codes R.&Regs. tit. 12, § 142-2.2 .............................................. 9

**Other Authorities**

H.R. Rep. No. 92-238 (1972), reprinted in 1972 U.S.C.C.A.N. 2146 ....................... 6

W. Keeton et al., Prosser and Keeton on Law of Torts § 70, p. 505 (5th ed. 1984) ................. 14

Plaintiffs Juana Sierra Trejo, Gabriela Flores Viegas, Inés Bello Castillo, Carmen Calixto Ramírez, and Lucero Santes Vázquez respectfully submit this memorandum in opposition to the Motion to Dismiss and Strike of Defendants Broadway Plaza Hotel, Salvatore Loduca, and Philip Loria ("Defendants").[1]

<u>Preliminary Statement</u>

Faced with allegations of egregious sexual and wage exploitation of five immigrant women in their employ, Defendants seek to treat this action as nothing more than a garden variety Fair Labor Standards Act case. In an effort to avoid addressing serious allegations of wrongful conduct, Defendants try everything from asserting technical procedural objections to Plaintiffs' Title VII claims, to inventing a trafficking element that supposedly applies to Plaintiffs' forced labor claims, to distancing themselves from the actions of their hotel manager even though, as the Complaint alleges, he was acting in Defendants' interests and they could and did observe the nature of his treatment of Plaintiffs. Defendants even ask the Court to strike allegations relating to Defendants' exploitation of Plaintiffs that go to the very heart of Plaintiffs' claims. As set forth below, all of these arguments lack merit. Accordingly, Defendants' Motion should be denied.[2]

First, the Court has jurisdiction over Plaintiffs' Title VII claims because the Equal Employment Opportunity Commission ("EEOC") properly issued notices of right to sue pursuant to its statutory authority. Defendants' argument that early right to sue notices lack

---

[1] To date, Plaintiffs have been unable to locate Defendant Felix David Buendía Ramírez in order to serve him. Plaintiffs are continuing their efforts based on new information recently provided by Defendants regarding Defendant Ramírez's last known addresses.

[2] Plaintiffs do not pursue their Tenth Claim for Relief.

validity is contrary to an unbroken line of recent case law in this District as well as Congressional intent and common sense.  (See Section I, below.)

Second, Plaintiffs have asserted enforceable claims for unpaid overtime and a spread of hours violation.  The New York Labor Law creates a private right of action for these claims and Defendants' arguments cite inapposite case law interpreting overtime provisions other than those relied on by Plaintiffs.  (See Section II, below.)

Third, Plaintiffs state a claim of forced labor under 18 U.S.C. § 1589 for which Defendants may be held liable. The Complaint alleges threats of deportation that are exactly the kind of "abuse of law or legal process" covered by Section 1589.  Moreover, it is irrelevant whether this case involves "trafficking" since this supposed "element" cited by Defendants is completely absent from the actual plain language of the forced labor provision. (See Section III, below.)

Fourth, Plaintiffs' claims for fraudulent inducement and for negligent hiring, retention, and supervision are more than adequately pled, particularly given the inferences that must be drawn in Plaintiffs' favor at this stage of the case.  For example, contrary to Defendants' claims, at-will employees may pursue claims of fraudulent inducement where, as here, the Complaint alleges that Defendants never intended to fulfill their obligations to Plaintiffs.  Similarly, the Complaint expressly alleges that Defendants had knowledge of and permitted the abusive and harassing behavior of Defendant Ramírez, which is precisely what a claim for negligent hiring, retention and supervision requires.  (See Sections IV and V, below.)

Finally, none of the allegations in the Complaint should be stricken.  Not only are motions to strike disfavored, but all of the allegations at issue correspond to the proof Plaintiffs will offer at trial in support of their claims.  (See Section VII, below.)

<u>Relevant Factual Background</u>

<u>The Allegations of the Complaint</u>

Plaintiffs are immigrant Latina women who are current or former employees of Defendant Broadway Plaza Hotel. (Compl. ¶¶ 8–13.) Defendants Loduca, Loria, and Ramírez are the Broadway Plaza Hotel's top management. (<u>Id.</u> ¶¶ 15–18.) Plaintiffs allege that during their employment at the Broadway Plaza Hotel, they faced sexual harassment, a hostile work environment, and retaliation; were denied permission to eat, drink, or use the restroom during the workday; were forced to work long hours for seven days a week yet denied any compensation for certain work performed and never paid overtime pay; and were threatened with deportation, emotional and physical abuse, and in some cases physical harm. (<u>Id.</u> ¶ 2.)

<u>Procedural History</u>

Plaintiffs filed sexual harassment and retaliation charges with the EEOC on February 4, 2004. (EEOC Charges of Discrimination, Ex. 1.) After being served with the charges, Defendants submitted a position statement on March 10, 2004 (Letter from Gringer to Gutierrez of 3/10/04, Ex. 2.), in which they did not dispute that the hotel manager, Defendant Ramírez, used "profanity to his staff" and "screamed at them at times." (<u>Id.</u> at 1-2.) Defendants claimed, however, that "Mr. Ramírez conduct was neither so severe nor pervasive that it created a hostile work environment under Title VII." (<u>Id.</u> at 1.) Defendants also disputed certain of the specifics of Plaintiffs' charges of sexual harassment, (<u>id.</u> at 2-4), but acknowledged that after Plaintiffs filed their charges, Defendant Ramírez was terminated, (<u>Id.</u> at 1.) Plaintiffs then filed a rebuttal to Defendants' position statement on April 13, 2004. (Letter from Arnett to Gutierrez of 4/13/04, Ex. 3.)

3

The EEOC initiated an investigation into the charges of discrimination and interviewed Plaintiffs, Defendants, and several employees of the Broadway Plaza Hotel. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 6.) When it became clear that the EEOC would be unable to conclude its investigation within 180 days, and because Plaintiffs desired to file the present case with ripe Title VII claims, Plaintiffs requested early right to sue notices from the EEOC on May 19, 2004. (Letter from Arnett to Yourke of 5/19/04, Ex. 4.) In response, the agency concluded that it "would be unable to complete the processing of the charges within 180 days," (Letter from Lewis to Arnett of 5/20/04, Ex. 5), and issued notices of right to sue on May 20, 2004 (EEOC Notices of Right to Sue, 5/20/04, Ex. 6). Plaintiffs filed the present lawsuit on May 27, 2004, raising their claims of discrimination and retaliation in addition to multiple labor law and tort violations.

<u>Argument</u>

## I.   THE EEOC PROPERLY ISSUED EARLY RIGHT TO SUE NOTICES AND THE COURT HAS JURISDICTION OVER PLAINTIFFS' TITLE VII CLAIMS.

Defendants argue that Plaintiffs' Title VII claims (the Fourth and Fifth Claims for Relief) should be dismissed because the EEOC improperly issued early right to sue notices, purportedly depriving this Court of jurisdiction over these claims.  Defendants are wrong, as an unbroken line of recent case law from this district demonstrates.

To initiate a claim of discrimination under Title VII of the Civil Rights Act of 1964, a complainant must first file a charge of discrimination with the EEOC. After 180 days, the complainant has the right to receive a notice of right to sue, upon receipt of which the complainant has 90 days to file a complaint in federal district court. 42 U.S.C. § 2000e-5(f)(1). Pursuant to 29 C.F.R. § 1601.28(a)(2), the EEOC may also issue a right to sue notice <u>before</u> 180 days have expired if the EEOC determines "that it is probable that the Commission will be

unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect."  29 C.F.R. § 1601.28(a)(2).

Here, it is undisputed that the EEOC complied with 29 C.F.R. § 1601.28(a)(2) in issuing Plaintiffs early notices of right to sue.  These notices included the precise finding required by regulation, stating that "it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge." (Ex. 6.) As all Southern District of New York cases considering the issue in the last several years have concluded, these early right to sue notices vest this Court with jurisdiction over Plaintiffs' Title VII claims. See Hellgren v. Bell Atlantic Corp., No. 99-cv-11937, 2000 WL 726496 (S.D.N.Y. May 30, 2000); Parker v. Metro. Transp. Auth., 97 F. Supp. 2d 437 (S.D.N.Y. 2000); Nodelman v. Gruner & Jahr USA Publ'g, No. 98-cv-1231, 2000 WL 502858 (S.D.N.Y. April 26, 2000); Palumbo v. Lufthansa German Airlines, No. 98-civ-5005, 1999 WL 540446 (S.D.N.Y. July 26, 1999); Rosario v. Copacabana Night Club, Inc., No. 97-civ-2052, 1998 WL 273110 (S.D.N.Y. May 28, 1998); Figueira v. Black Entm't Television, Inc., 944 F. Supp. 299 (S.D.N.Y. 1996).

This Southern District authority, as well as similar authority from the Courts of Appeals for the Eleventh and Ninth Circuits, Sims v. Trus Joist MacMillan, 22 F.3d 1059 (11th Cir. 1994); Bryant v. Cal. Brewers Ass'n, 585 F.2d 421 (9th Cir. 1978), vacated on other grounds 444 U.S. 598 (1980), relies on the plain language of Title VII, legislative intent, and common sense in recognizing -- contrary to Defendants' contention -- that the early right to sue regulation is valid. As these cases note, nothing in the plain language of Title VII prohibits the EEOC from issuing notices of right to sue before the expiration of 180 days. Sims, 22 F.3d at 1062  ("[T]he statute on its face does not prohibit the Commission from issuing a right to sue letter before the 180 days have expired."); Bryant, 585 F.2d at 425 ("Nowhere does the statute prohibit the EEOC

from issuing such notice before the expiration of the 180-day period."); <u>Nodelman</u>, 2000 WL 502858, at *5 ("[T]he plain language of Section 2000e-f(5)(1) does not preclude the EEOC from issuing an early right-to-sue notice."); <u>Figueira</u>, 944 F. Supp. at 304 ("Title VII, on its face, does not prohibit the EEOC from issuing a notice of right to sue before the 180-day period has expired."). Indeed, the early notice regulation was enacted pursuant to 42 U.S.C. § 2000e-12(a), which expressly provides the EEOC with the "authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e-12(a). <u>See, e.g.</u>, <u>Sims</u>, 22 F.3d at 1062 (pointing out the EEOC's authority under 42 U.S.C. § 2000e-12(a) to issue regulations such as the early right to sue regulation); <u>Palumbo</u>, 1999 WL 540446, at *1 (same); <u>Figueira</u>, 944 F. Supp. at 304 (same).

Moreover, permitting claimants to withdraw their claims of discrimination from the agency after the EEOC determines that it will not be able to conclude an investigation within 180 days is consistent with Congress' intent that victims of discrimination not watch their claims languish in futility at the EEOC and that claims of discrimination proceed expeditiously. <u>See</u> H.R. Rep. No. 92-238 (1972), <u>reprinted in</u> 1972 U.S.C.C.A.N. 2146; <u>see also</u> <u>Sims</u>, 22 F.3d at 1063 ("Once the Commission determines that it will be unable to process the complainant's charge within the 180-day period, no legitimate purpose is served by forcing delay."); <u>Nodelman</u>, 2000 WL 502858, at *5 (finding that the early right to sue notices further "sound policy, since [they] promote[] prompt resolution of claims"); <u>Figueira</u>, 944 F. Supp. at 304-05 ("The EEOC is not barred from waiving its exclusive jurisdiction before expiration of the 180 days, if it believes that doing so will benefit claimants and facilitate the purposes of Title VII."). While Congress intended for the EEOC to be the main arbiter of Title VII claims and wanted to encourage conciliation, <u>Sims</u>, 22 F.3d at 1063; <u>Figueira</u>, 944 F. Supp. at 304, Congress also recognized that,

given the enormous backlog at the agency, the vast majority of claims could not be thoroughly

investigated and conciliated within a reasonable time.

Given this backlog, courts have also relied on common sense in validating the regulation

permitting early notices of right to sue. As the Ninth Circuit has found, due to a "huge backlog of

Title VII cases . . . it would be a travesty to require the EEOC and [a plaintiff] to mark time until

180 days were counted off." Bryant, 585 F.2d at 425; see also Hellgren, 2000 WL 726496, at *1

(finding that "the EEOC and state administrative agencies are so overwhelmed with charges that

they could not possibly investigate more than a small fraction of them within 180 days"); Parker,

97 F. Supp. 2d at 445 (same); Figueira, 944 F. Supp. at 304 (quoting H.R. Rep. No. 92-238

(1972), reprinted in 1972 U.S.C.C.A.N. 2146).

Defendants nonetheless argue that the EEOC's exercise of its authority to issue early

right to sue letters was invalid based on case law from the Court of Appeals for the District of

Columbia, Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336 (D.C. Cir. 1999), and certain

district courts.  (See Defs.' Mem. at 4-5 (citing cases).)  According to these courts, an early right

to sue option allows the EEOC to shirk its statutory investigative responsibility under 42 U.S.C.

§ 2000e-5(b). (See id. at 5.)  But even if this might be a hypothetical possibility in some contexts,

albeit a possibility that has clearly been rejected by this District, it is not the reality in this case.

Rather, as Defendants point out, the EEOC initiated an investigation into Plaintiffs' claims of

discrimination. (See Defs.' Mem. at 6.) Only after conducting some investigation did the agency

determine that significantly more investigation would be needed and that such additional

investigation could not be completed within 180 days. (Letter from Lewis to Arnett of 5/20/04,

Ex. 6.) Put simply, the EEOC did not shirk its responsibility to investigate the claims.  Thus,

even if the <u>Martini</u> line of cases were not contrary to the recent authority from this district (and it is), the reasoning of these cases is inapposite.

<u>Martini</u> and other courts also reason that the EEOC's administrative processes should be allowed to run their course for a full 180 days because Congress preferred informal settlement of discrimination claims over private lawsuits. 178 F.3d at 1346-47. Here, however, Plaintiffs had every intention of pursuing the claims over which the EEOC lacked jurisdiction in federal court and made the EEOC aware of this intention. (Ex. 4.) Thus, a complete resolution could never have been reached through the administrative process regardless of whether a full 180 days had elapsed.

In sum, there is simply no reason to accept the "travesty" that Plaintiffs be required "to mark time until 180 days [are] counted off." <u>Bryant</u>, 585 F.2d at 425.  The most relevant case law rightly rejects this result and, certainly under the facts here, logic does not support it.

## II.   NEW YORK STATE LAW PERMITS CAUSES OF ACTION FOR UNPAID OVERTIME AND A SPREAD OF HOURS VIOLATION.

Plaintiffs' Second Claim for Relief seeks unpaid overtime under New York law. In their Eleventh Claim for Relief, Plaintiffs additionally assert a claim based on, <u>inter alia</u>, Defendants' failure to pay them one additional hour of pay on days when they worked more than ten hours, also known as a spread of hours violation.  Private rights of action for overtime and spread of hours violations are authorized by Sections 655 and 663 of the New York Labor Law.  <u>See</u> N.Y. Lab. Law §§ 655, 663.1.  Defendants' argument that no private right of action exists for these claims is therefore erroneous.[3]

_____

[3] Plaintiffs do not pursue the claims for meal break and day of rest violations referenced in the Eleventh Claim for Relief.  Defendants' refusal to allow Plaintiffs to eat, drink, or use the restroom and Defendants' requirement that Plaintiffs work seven days a week are nonetheless relevant to other claims in the Complaint, including wage and hour claims and tort claims.  For

New York Labor Law § 655 grants the Commissioner of Labor the authority to promulgate regulations regarding "overtime or part-time rates" and "wage rate provisions governing split shift, excessive spread of hours and weekly guarantee." N.Y. Lab. Law § 655(5)(b).  Pursuant to this authority, the Commissioner enacted section 142-2.2 of title 12 of New York's Compilation of Codes, Rules, and Regulations, a general regulation that mandates that employers pay employees overtime in accordance with the Fair Labor Standards Act. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  The Commissioner also promulgated a specific wage order that entitles non residential hotel workers who work more than 40 hours per week to "overtime at a wage rate of 1 1/2 times the employee's regular rate." Id. § 138-2.2. In addition to these regulations, sections 142-2.4 and 138-2.6 of the New York Compilation of Codes, Rules and Regulations (also promulgated under the authority of § 655) explicitly entitle employees in general and hotel employees in particular to the right to receive one hour's worth of extra pay on each day they work in excess of ten hours.   Id. §§ 142-2.4, 138-2.6.

Section 663 of the Labor Law in turn explicitly permits an employee to bring a civil action for the violation of any of the provisions of Article 19, including those enacted pursuant to section 655.

> If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees as may be allowed by the court, and if such underpayment was willful, an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due him . . . .

example, one of the reasons that Plaintiffs worked overtime without compensation is because they were forced to work, without pay, through statutorily required break periods.

9

N.Y. Lab. Law § 663.1 (emphasis added). Because the overtime and spread of hours provisions were promulgated pursuant to section 655, they are included as provisions for which a private cause of action exists under section 663.

Not surprisingly, courts have consistently upheld private enforcement of violations of the overtime, spread of hours, and other wage regulations enacted pursuant to Section 655 of the New York Labor Law. See, e.g., Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (holding that defendant hotel employer violated spread of hours provision § 138-2.6 and awarding damages to plaintiff hotel employee); Manliguez v. Joseph, 226 F. Supp. 2d 377, 389 (E.D.N.Y. 2002) (finding that plaintiff stated claim for unpaid overtime under § 142-2.2 and denying motion to dismiss); Ballard v. Cmty. Care Home Referral Serv., Inc., 695 N.Y.S.2d 130, 131 (N.Y. App. Div. 1999) (recognizing an overtime claim under New York state law and explaining the statutory basis for New York's overtime regulations); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998) (holding that employees were entitled to one hour of pay for each day spread of hours exceeded ten hours and awarding damages based on violation of Section 142-2.4).

Defendants rely upon inapposite case law in arguing that there are no controlling overtime provisions under New York State law. In Hornstein v. Negev Airbase Constructors, 488 N.Y.S.2d 435, 437 (N.Y. App. Div. 1985), the court, without providing any analysis, determined that there was no right to overtime under section 160 of the New York Labor Law, a provision that covers "hours to constitute a day's work," N.Y. Lab. Law § 160. Plaintiffs, by contrast, bring their claim for state overtime wages under an enforceable provision that specifically covers overtime for hotel workers. See N.Y. Comp. Codes R. & Regs. tit. 12, § 138-2.2. Hornstein's

interpretation of the meaning of Section 160 is simply irrelevant.[4]  Similarly, Defendants'

citation to cases rejecting claims under Section 162 for employers' refusal to provide lunch

periods, (see Defs.' Mem. at 12), simply does not contradict the proposition that the spread of

hours regulations are enforceable in a private action pursuant to the plain language of Section

663.  Defendants' motion to dismiss the state overtime and spread of hours claims must therefore

be denied.

## III.    THE COMPLAINT STATES A CLAIM FOR FORCED LABOR.

Plaintiffs' Third Claim for Relief is based on 2000 and 2003 amendments to the criminal

code that together provide a private right of action for victims of forced labor.  See 18 U.S.C. §§

1589, 1595.  Defendants seek to dismiss this claim.  First, Defendants argue that this claim is

defective because the Complaint does not allege trafficking of Plaintiffs. (Defs.' Mem. at 8.)

Second, Defendants argue that Defendant Broadway Plaza cannot be held liable for violations of

the statute based on the conduct of its hotel manager, Defendant Ramírez. (Id. at 10.) Both

arguments fail.

The forced labor provision provides in full:

> Whoever knowingly provides or obtains the labor or services of a
> person—
>
> (1) by threats of serious harm to, or physical restraint against, that
>     person or another person;
> (2) by means of any scheme, plan, or pattern intended to cause the
>     person to believe that, if the person did not perform such labor or
>     services, that person or another person would suffer serious harm
>     or physical restraint; or
> (3) by means of the abuse or threatened abuse of law or the legal
>     process

---

[4] Defendants also cite to Gallegos v. The Brandeis School, 189 F.R.D. 256, 258
(E.D.N.Y. 1999), which simply quotes Hornstein with no analysis in finding that there is no
mandatory overtime provision in New York State.

shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1589 (emphasis added).

Plaintiffs' Third Claim for Relief, as applied to Defendant Broadway Plaza Hotel, is based on the third form of forced labor.  In particular, Plaintiffs allege that Defendant Broadway Plaza Hotel, through the actions of its agent, Defendant Ramírez, obtained the benefit of their labor based on threats of deportation.  (Compl. ¶ 2.d ("Any efforts to defend themselves against exploitation led to threats of deportation, emotional and verbal abuse, and in some cases threats of physical harm."), ¶ 44 ("Defendant Ramírez said that he could have Plaintiffs deported if they refused to obey him or if they complained to outside sources about his treatment of them."), ¶ 62 ("Defendant Ramírez's treatment of Plaintiffs . . . including . . . threats of deportation and even physical harm—caused Plaintiffs physical injury and extreme emotional distress and anxiety.").).

Threats of deportation "clearly fall within the concept and definition of 'abuse of legal process' since the alleged objective for same was to intimidate and coerce the workers into 'forced labor.'" United States v. Garcia, No. 02-cr-110s-01, 2003 WL 22956917 (W.D.N.Y. Dec. 2, 2003) (only available opinion to interpret 18 U.S.C. § 1589 to date)[5]; cf. United States v. Kozminski, 487 U.S. 931, 948 (1988) (stating in a case defining the contours of involuntary servitude, a crime one step shy of slavery, that "it is possible that threatening . . . an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude").

---

[5] Defendants correctly point out that Garcia involved allegations of trafficking in addition to forced labor. The court's analysis of the forced labor provision, however, was in no way contingent upon Plaintiffs' status as trafficking victims.

Nevertheless, Defendants wrongly argue that Plaintiffs fail to state a claim for forced labor because they do not allege "trafficking." (See Defs.' Mem. at 8.) As Defendants note, the forced labor provision was enacted as part of the larger Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"). But the title of this Act does not support the unfounded conclusion that victims of forced labor must also be victims of trafficking in order to assert a claim under Section 1589. There is simply no mention of a trafficking element in the plain language of this provision, which is dispositive.  See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ( "Absent a clearly expressed legislative intention to the contrary, [the statute's] language must ordinarily be regarded as conclusive.")  Indeed, the trafficking element that Defendants try to invent in Section 1589 is actually found in Section 1590 of the TVPA, which expressly covers liability for someone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. §1590.  As section 1590 shows, Congress plainly knew how to create a trafficking element if it so wanted.  It is absurd for Defendants to try to import into section 1589 an element that Congress itself plainly rejected.[6]

---

[6] While a body of case law interpreting the forced labor provision has not yet fully developed, international law, upon which the TVPA draws heavily, is instructive. See H.R. Rep. No. 106-939, at 62 (2000). As with 18 U.S.C. § 1589, the definitions of forced labor found in international instruments do not include a trafficking element. For example, the Forced Labor Convention of 1930 defines forced or compulsory labor as "all work or service which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily." 1930 International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor, May 1, 1932, art. 2, 39 U.N.T.S. 55.  In addition, Article 8 of the International Covenant on Civil and Political Rights, which outlaws slavery and servitude in addition to forced labor, notes that "[n]o one shall be required to perform forced or compulsory labour." International Covenant on Civil and Political Rights, Mar. 23, 1976, art. 8, 99 U.N.T.S. 171.

Finally, Defendant Broadway Plaza Hotel is wrong to argue – without citation to a single case – that Defendant Ramírez's conduct, namely his threats of deportation, cannot be imputed to his employer. It is blackletter law that agency doctrine "imposes [employer] liability where the employee's 'purpose, however misguided, is wholly or in part to further the master's business.'" Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 756 (1998) (quoting W. Keeton et al., Prosser and Keeton on Law of Torts § 70, p. 505 (5th ed. 1984)).  Indeed, employee conduct is "within the scope of employment when 'actuated, at least in part, by a purpose to serve the [employer],' even if it is forbidden by the employer." Id. (quoting Restatement (Second) of Agency §§ 228(1)(c), 230 (alteration in original)).  See also Falbaum v. Pomerantz, 891 F. Supp. 986, 989 (S.D.N.Y. 1995) (finding that a supervisory employee who fires an employee with wrongful intent "does not carry his behavior so far beyond the orbit of his responsibilities as to excuse the employer" (citation omitted)); In re Ivan F. Boesky Securities Litigation, 36 F.3d 255, 265 (2d Cir. 1994) (finding that an employer may be liable for the intentional and criminal acts of an employee when those acts are in furtherance of the employer's interests).

Here, not only do Plaintiffs allege that Defendant Ramírez's acts at the hotel were undertaken in the scope of his employment, (Compl. ¶15), but the very essence of the specific allegations about Ramírez's conduct is that he sought to obtain labor from Plaintiffs for the benefit of his employer through, among other wrongful conduct, threats of deportation. Certainly on a motion to dismiss -- where all well-pleaded factual allegations are assumed to be true, and the plaintiff must be given the benefit of all reasonable inferences that may be drawn from such allegations, Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 699–700 (2d Cir. 1994) -- there is ample basis to infer from the Complaint that, however misguided his

actions may have been, Ramírez, as the manager of the hotel, was actuated by a purpose to serve his employer.

## IV.    THE COMPLAINT STATES A CLAIM FOR FRAUDULENT INDUCEMENT

Plaintiffs' Twelfth Claim for Relief is for fraudulent inducement.  Based on allegations in the complaint and drawing all inferences in their favor, Jackson Nat'l Life Ins., 32 F.3d at 699-700, Plaintiffs have stated a claim.

The Complaint alleges:

> Plaintiffs agreed to work at the Broadway Plaza Hotel in reliance upon Defendant Ramírez's description of the salary and responsibilities of the housekeeping position. Specifically, when Plaintiffs were hired, they were told, with the exception of Plaintiff Santes, that they would work eight hours per day, for six days per week, at a rate of $5.25 per hour. Defendant Ramírez told Plaintiff Santes that she would be paid $250 per week for working eight hours per day, six days per week.  Defendant Ramírez also told Plaintiffs that their positions would entail cleaning 15 rooms per day.

(Compl. ¶ 22.) The complaint further alleges that "Defendant Ramírez  never intended for Plaintiffs to work in accordance with the terms and conditions of employment to which Plaintiffs had agreed. Indeed, Defendant Ramírez frequently required that Plaintiffs work seven days a week, often for up to 15 hours a day." (Id. ¶ 24.)

Plaintiffs have satisfied the pleading requirements of Rule 9(b).  The Complaint alleges with specificity that the speaker of the alleged misstatements was Defendant Ramírez and also provides the content of his misstatements about the terms and conditions of Plaintiffs' employment. (Id. ¶ 22.) Moreover, the Complaint provides the time frame of the misrepresentations—"when Plaintiffs were hired." (Id.) Thus, "given this level of specificity, [P]laintiffs have placed [Defendants] on notice and pleaded their claim with sufficient particularity."  Gabriel Capital, L.P. v. NatWest Finance, Inc., 94 F.Supp.2d 491, 504 (S.D.N.Y. 2000) (holding that plaintiffs satisfied pleading requirements despite their inability to specifically

identify the speaker of each statement). Cf. DiVittorio v. Equidyne Extractive Indus., Inc., 822
F.2d 1242, 1247 (2d Cir. 1987) (citation omitted) (finding that Rule 9(b) is designed, in part, to
"provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of defense.").

Second, there is no merit to Defendants' argument that plaintiffs have failed to plead a
strong inference of fraudulent intent.  As can be readily inferred from the allegations of the
Complaint, Defendants' motive in fraudulently inducing Plaintiffs to accept a job at the hotel
was to obtain the economic benefit of Plaintiffs as a cheap source of labor.

Finally, Defendants' arguments (See Defs.' Mem. at 13-14) ignore that in this Circuit at-
will employees may pursue claims of fraudulent inducement. See, e.g., Stewart v. Jackson &
Nash, 976 F.2d 86, 88-89 (2d Cir. 1992) (finding that an at-will employee had stated a claim for
fraudulent inducement).  In particular, an at-will employee may state a claim for fraudulent
inducement if the employee alleges "false representations of present fact" rather than
"promissory statement[s] as to what will be done in the future." Id. at 89 (quoting Deerfield
Cmty. v. Cheesebrough-Ponds, 502 N.E.2d 1003, 1005 (N.Y. 1986)) (alteration in original).
Under New York law, a promise made with a preconceived and undisclosed intention of not
performing it constitutes an allegation of present fact.  Id. at 89 (finding that defendant's
knowledge that it did not intend to fulfill a representation at the time the representation was made
is a present fact giving rise to a claim for fraudulent inducement); Doehla v. Wathne Ltd., Inc.,
No. 98-civ-6087, 1999 WL 566311, at * 15 (S.D.N.Y. Aug. 3, 1999) (holding that allegations
that employer made false representations to induce plaintiff's acceptance of an employment offer
was sufficient to withstand dismissal); Sabo v. Delman, 143 N.E.2d 906, 908 (N.Y. 1957) ("[I]f a
promise was actually made with a preconceived and undisclosed intention of not performing it, it

constitutes a misrepresentation of a material existing fact upon which an action for rescission [based on fraudulent inducement] may be predicated." (internal citations omitted)).

Here, Defendants' characterization of the representations made to Plaintiffs as "future promises" regarding "the terms of their future employment," (Defs.' Mem. at 13), is erroneous. Drawing all reasonable inferences in favor of Plaintiffs, Jackson, 32 F.3d at 699-700, there is plainly a basis to infer from the Complaint that Defendants never had any intention of fulfilling their obligations to Plaintiffs, as evidenced by, for example, their systematic and egregious failure to live up to the representations about work conditions.

Nor are Plaintiffs' fraudulent inducement claims "merely breach of contract 'disguised' as a fraud claim." (Defs.' Mem. at 13.) As the Second Circuit found under New York law:

> [I]t is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable . . . . Thus, fraud in the inducement of a written contract is not merged therein so as to preclude an action for fraud.

Stewart, 976 F.2d at 88-89 (citing 60 N.Y. Jur. 2d Fraud and Deceit § 206, at 740 (1987)) (omission in original).

Plaintiffs have thus alleged a separable and distinct claim for fraudulent inducement and the motion to dismiss the Twelfth Claim for Relief should be denied.

## V.   THE COMPLAINT STATES A CLAIM FOR NEGLIGENT HIRING, RETENTION, AND SUPERVISION.

Plaintiffs' Sixteenth Claim for Relief is for negligent hiring, retention, and supervision, based on Defendants' actual or constructive knowledge of Defendant Ramírez's unlawful treatment of Plaintiffs. New York State common law has long recognized the tort of negligent hiring, retention, and supervision, defined as the breach of an employer's "duty to use reasonable care in not continuing employment of any person with known dangerous propensities that present a foreseeable risk of harm to others." Sharon P. Stiller, New York Practice Series:

17

Employment Law in New York § 5:139 (2004). A plaintiff must establish that she suffered damages as a result of the defendant employer's breach of this duty, see Vincenzino v. Calvosa, 572 N.Y.S.2d 611, 612 (N.Y. Sup. Ct. 1991), and demonstrate that the defendant employer knew of the tortious employee's conduct or "failed to take reasonable measures to discover such propensity" for the conduct, Baume v. 212 E. 10 N.Y. Bar Ltd., 634 N.Y.S.2d 478, 480 (N.Y. App. Div. 1995). Knowledge may be actual or constructive. Thomas v. N.Y. City Health & Hosps. Corp., No. 00-civ-6760, 2001 WL 1218398, at *5 (S.D.N.Y. Oct. 9, 2001) (citing Daniels v. Loizzo, 174 F.R.D. 295, 299 (S.D.N.Y. 1997)).

Although bare legal conclusions will not survive a motion to dismiss, Silberstein v. Advance Magazine Publ'r, Inc., 988 F. Supp. 391, 395 (S.D.N.Y. 1997) (dismissing claim because no facts relating to defendant's actual or constructive knowledge were alleged); Daniels, 174 F.R.D. at 299 (same), negligent hiring, retention, and supervision does not have to be pled with specificity, Kenneth R. v. Roman Catholic Diocese of Brooklyn, 654 N.Y.S.2d 791, 794 (N.Y. App. Div. 1997); see also Gieseler v. Smith, No. 85-civ-4435, 1987 WL 27705, at *2 (S.D.N.Y. Dec. 7, 1987) (denying motion to dismiss because plaintiff alleged that defendants knew or should have known of employer's propensity for tortious conduct).  Facts regarding an employee's history of abusive and harassing behavior may sufficiently demonstrate an employer's knowledge of an employee's inappropriate conduct or the employer's failure to take reasonable measures to discover such conduct. See Kenneth R., 654 N.Y.S.2d at 795 (denying defendants' motion to dismiss because plaintiffs alleged that abused children spoke of conduct to non-defendant priests).

In the present case, Plaintiffs allege that Defendants Loduca and Loria knew or should have known of Defendant Ramírez's abusive and harassing behavior. First, Plaintiffs allege that

Defendants "had knowledge of and permitted actions, practices, and policies" that caused Plaintiffs injuries. (Compl. ¶ 55.) The Complaint alleges that Defendants Loduca and Loria observed the daily operations of the hotel, including Defendant Ramírez's treatment of Plaintiffs, from their on-site offices in the hotel. (Id. ¶ 57.)  In addition, the Complaint alleges that Defendants failed to take reasonable measures to discover Defendant Ramírez's propensity for tortious conduct. Not only was there no grievance procedure at the hotel, (id. ¶ 53), Plaintiffs were threatened with termination if they attempted to speak to Defendants Loduca and Loria, (id. ¶ 54). These specific factual allegations sufficiently meet the pleading requirements for a claim of negligent hiring, retention and supervision, and thus the motion to dismiss should be denied.

## VI.   NONE OF THE ALLEGATIONS OF THE PRELIMINARY STATEMENT SHOULD BE STRICKEN

Finally, Defendants move to strike portions of the Complaint's preliminary statement pursuant to Federal Rule of Civil Procedure 12(f).  Defendants do not specify which statements they believe are improper. Regardless of which statements they might object to, Defendants are free to try to disprove these allegations, but there is no merit to their claim that the allegations should be stricken under Rule 12(f).

It is well settled that "the courts should not tamper with pleadings unless there is a strong reason for so doing."  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). Thus, "Rule 12(f) motions are viewed by courts with disfavor and are granted infrequently." Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc., 944 F. Supp. 240, 250 (S.D.N.Y. 1996).  A motion to strike on grounds of impertinence and immateriality should be denied unless "it can be shown that no evidence in support of the allegation would be admissible." Lipsky, 551 F.2d at 893.

19

Here, Defendants do not even try to explain how the rules of evidence could somehow foreclose at trial the admissibility of evidence concerning the allegations at issue.  Nor could they.  The allegations of exploitation of Plaintiffs to which Defendants object are at the very heart of this case.  The fact that Plaintiffs were "preyed upon as potential or actual sexual conquests," (Compl. ¶ 2.a) – as supported in great detail in paragraphs 46 through 53 of the Complaint – is certainly relevant to Plaintiffs' sexual harassment and hostile work environment claims.  Similarly, there can be no serious dispute that the denial of permission to take legally mandated breaks to eat, drink, or use the restroom, (id. ¶ 33), straightforwardly explains one of the reasons why Plaintiffs were forced to work overtime hours for which they were not compensated. And the allegation that Plaintiffs' "efforts to defend themselves against exploitation led to threats of deportation, emotional and verbal abuse, and in some cases threats of physical harm," (id. ¶ 2.d), is material to Plaintiffs' retaliation and forced labor claims. These allegations also separately support Plaintiffs' claim of intentional infliction of emotional distress.

In sum, far from being "extraneous," (see Defs.' Mem. at 16), Plaintiffs' allegations correspond directly to the proof that will be offered at trial to substantiate Plaintiffs' claims. While Defendants may prefer their conduct had not received press attention, (see id. at 17), that desire is not a basis under Rule 12(f) to strike material allegations in a public document that go to the very essence of the actionable conduct alleged in this case.  The motion to strike should therefore be denied.

<u>Conclusion</u>

For the reasons set forth above, Plaintiffs respectfully submit that Defendants' motion to dismiss and to strike should be denied in its entirety.

Date:  September 13, 2004

Respectfully submitted,

<u>/s/ Eric Brenner</u>
Lenora M. Lapidus (LL-6592)
Jennifer Arnett (JA-6161)
Women's Rights Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-519-7816
Fax: 212-549-2580

David A. Barrett (DA-9626)
Eric Brenner (EB-2177)
Boies, Schiller & Flexner, LLP
570 Lexington Avenue, 16th Floor
New York, NY  10022
Tel.: 212-446-2300
Fax:  212-446-2350

Attorneys for Plaintiffs

21